### KIRBY v. ROE et al.

(Supreme Court, Special Term, Albany County.    March 30, 1912.)

1. MILITIA (§ 7*)—TERM OF SERVICE—STATUTES.

Military Law (Consol. Laws 1909. c. 36) § S2, as amended by Laws 1911, c. 770, providing that any officer of the active militia who has reached the age of 64 shall be placed on the retired list by the Governor, is mandatory, and is automatic in its operation, and compels the Governor to retire any officer who has reached the age of 64 years.

[Ed. Note.—For other cases, see Militia, Cent. Dig. §§ 23–35; Dec. Dig. § 7.*]

2. MILITIA (§ 2*)—TERM OF SERVICE—STATUTES.

Military Law (Consol. Laws 1909, c. 36) § 82, as amended by Laws 1911, c. 770, providing that any officer of the active militia who has reached the age of 64 years shall be placed on the retired list, when considered in connection with sections 80 and 85, permitting the Governor to reassign any retired officer to active duty, but providing that a commissioned officer cannot be removed from office without his consent, except by the Senate on the recommendation of the Governor or, the sentence of a court-martial is not in conflict with Const. art. 11, § 6, declaring that no commissioned officer shall be removed from office during the term for which he shall have been appointed, unless by the Senate on the recommendation of the Governor or by a court-martial, construed in connection with article 10, § 3, providing that, when the duration of any office is not provided by the Constitution, it may be declared by law, and, if not so declared, the office shall be held during the pleasure of the authority making the appointment, since the retirement of an officer who has reached the age limit is not a removal from office, and since neither the Constitution nor the statutes have fixed the term of office, except so far as the statute has fixed it by age limit.

[Ed. Note.—For other cases, see Militia, Cent. Dig. § 2; Dec. Dig. § 2.*]

Application for writ of mandamus by William Maurice Kirby against Charles F. Roe, as Major General, commanding the Division National Guard, N. G. N. Y., and another, the Adjutant General of

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the State of New York, to compel the recognition of the applicant as an officer on the active list of the National Guard as a Major, Ordnance Department. Denied.

William G. Bates and Lynn W. Thompson, for applicant.

Thomas Carmody, Atty. Gen. (Joseph A. Kellogg and Valentine Taylor, of counsel), opposed.

RUDD, J. This is an application by William Maurice Kirby for a peremptory writ of mandamus directed to Charles F. Roe as Major General, commanding the Division National Guard, N. G. N. Y., and William Verbeck, the Adjutant General of the state of New York, to recognize the applicant, William Maurice Kirby, as an officer on the active list of the National Guard N. Y. as a Major, Ordnance Department, and to disregard Special Orders No. 280, Adjutant General's Office, dated December 31, 1911, which order places William Maurice Kirby upon the retired list, in accordance with section 82 of the Military Law, as amended by chapter 770 of the Laws of 1911. The applicant was on January 30, 1908, commissioned by the Governor of the state as Major, Ordnance Department, N. G. N. Y., with rank from December 31, 1908. This appointment by the Governor was pursuant to the provisions of section 74 of the Military Law. Applicant took his oath of office, and became thereby Major, Ordnance Department of the National Guard of the state of New York. Some time later, and on the 5th of February, 1908, by Special Orders No. 25 of the Adjutant General's Office, applicant was by order of the Governor directed to report to the Commanding Officer of the Division for duty. Thereupon the Commanding Officer of the Division by General Orders No. 2, dated February 10, 1908, assigned applicant to the duties which he performed until he was placed upon the retired list by direction of the Governor.

The salary of $2,500 per annum which applicant received, and which is referred to in the papers presented by applicant, was not a salary fixed by law attached to the office to which he was commissioned by the Governor, namely, that of Major, Ordnance Department, but it was part of an allowance made by the Legislature pursuant to the provisions of section 219 of the Military Law, and chapter 810, Laws 1911, for salaries of officers "detailed for duty on the Staff of the Division." This salary is evidently provided for officers having such detail, and for the period of the detail to the Staff of the Major General.

Between the time that applicant was commissioned by the Governor and his assignment by the Commanding Officer of the Division he held office, but he had no particular duties to perform. It would seem that he performed duties, not because he was Major, Ordnance Department, N. G. N. Y., but by reason of the fact that he was detailed for special duty upon the Staff of the Commanding Officer of the Division.

The phraseology of General Orders No. 2, dated February 10, 1908, by which the Commanding Officer of the Division detailed applicant, is as follows:

"The following officers having reported for duty on the staff of the Division are hereby assigned as follows:

" * * * Major William Maurice Kirby, Ordnance Department, as Ordnance Officer of the Division. Major Kirby will have charge under the supervision of Lieutenant Colonel Thurston of the small arms practice of the Third and Fourth Brigades. * * *

"By command of Major General Roe.

"Fred Phisterer, Adjutant General."

This was applicant's assignment.

No law fixed the compensation for services rendered under this assignment. The authority for a salary is, as above stated, under section 219 of the Military Law, which provides that:

"There shall be allowed the sum of $15,000, or so much thereof as may be necessary, for salaries of the following officers, detailed for duty on the staff of the division: * * * (2) Officers of the Ordnance Department. The amount thus allowed shall be expended as the Major General may direct."

None of the other officers under the Ordnance Department received compensation except the two detailed to the Division Staff. As to whether the officer filling this detail received a salary depends entirely upon the discretion of the Major General.

The above in outline states the facts with reference to the office which applicant held, the position which he filled, the salary which he received, and the manner and provision of law with reference to the payment of the same.

Applicant was relieved from active duty and placed upon the retired list under and in accordance with section 82 of the Military Law as amended by chapter 770 of the Laws of 1911.

[1] The portion of section 82 of the Military Law concerning which we are interested reads as follows:

"Sec. 82. Retirement and discharge. Any officer of the active militia who has reached the age of sixty-four years shall be placed upon the retired list by the Governor."

This is the exact form in which the statute has been since it was originally enacted as a part of the Military Code (Laws 1898, c. 212) as section 63 of such Code, excepting that in the original enactment the statute read may be placed upon the retired list by the Governor, and by the enactment of chapter 770 of the Laws of 1911 the word "shall" was substituted for the word "may."

Section 82 of the Military Law is therefore automatic in its operation, and directs and compels the Governor of the state to retire any officer of the active militia who has reached the age of 64 years, and place his name upon the retired list. The Governor has no option. The action is mandatory.

[2] Section 6 of article 11 of the Constitution of the state of New York reads as follows:

"The commissioned officers shall be commissioned by the Governor as Commander-in-Chief. No commissioned officer shall be removed from office during the term for which he shall have been appointed or elected, unless by the Senate on the recommendation of the Governor, stating the grounds on which such removal is recommended, or by the sentence of a court-martial, or upon the findings of an examining board organized pursuant to law, or for absence without leave for a period of six months or more."

The question arising here is whether section 82 of the Military Law, as amended by chapter 770 of the Laws of 1911, conflicts with the provisions of the Constitution of the state of New York.

The statute of the state has practically been the same for 13 years. During 12 of these years the Governor had power to retire officers of the National Guard, and during the last year, unless the statute is violative of the Constitution, it was his duty to retire. The age limit fixed by the Military Law is the same as that fixed by the federal law, and which controls in the regular army of the United States.

Under section 80 of the Military Law the Governor is permitted to reassign any retired officer to active duty. It has been said that:

"The public interests imperatively determine that legislative enactments should be recognized and enforced by the courts as embodying the will of the people, unless they are plainly and palpably beyond all question in violation of the fundamental law of the Constitution."

The office which applicant held was the one he assumed when he subscribed his oath of office. The office was not created by appointment on the Staff of the Commanding Officer of the Division. The office which he held was not property, and the compensation which came to him did not come by reason of the office which he held, but it was paid under the direction of the Commanding Officer as compensation for services rendered.

The legislative acts seem to be entirely consistent with a recognition of the constitutional provision that the applicant claims protects him, and that is apparent when we read section 85 of the Military Law. Art. 4 of that section reads:

"A commissioned officer cannot be removed from office without his consent, except by the Senate upon the recommendation of the Governor, the sentence of a court-martial, or as provided in this chapter."

This is practically the same provision as contained in the Constitution, and that it has to do with the removal from office as evidently and clearly distinguished from a relief from active duty.

Applicant is still an officer. He is to-day commissioned as Major. He has the title, and he can wear the uniform. He is subject to the military law. He may be court-martialed. He can apply for a court of inquiry. He may be, under section 80 of the Military Law, reassigned to active duty in the discretion of the Governor. It does not seem as if he had been removed from office. He has been relieved from active duty. If he did not hold an office, he would not to-day be an officer. He is now, by retirement, prevented from performing the active duties of an ordnance officer on the staff of the Major General commanding the Division.

If applicant's position is correct and the relieving from active duty is a removal from office, then the Commander-in-Chief would have no power to relieve him from this duty and detail him to perform any other, and particularly so if it should happen that such a change should result in the loss of compensation to the officer thus detailed. Such a situation, if applicant is correct in his theory, would lead, not only to inefficiency, but also to what seems to the ordinary mind confusion. In fact, the retirement of an officer, such as was effected in

this case by the operation of the statute, is no different from the situation which arises when an officer is placed upon the supernumerary list by the disbandment of a military organization by the Governor of the state. The court has held that in a disbandment the officer does not lose his rank or commission; he is simply relieved, and may be again assigned. It has also been stated by the court that the deprivation of an officer of his command is not a removal from his office. This holding by the court has been in connection with the study of the effect of the constitutional prohibition against the removal of an officer from office excepting in the manner provided by the Constitution, and the court has said that an officer retains his office so long as he retains his commission.

The constitutional prohibition says:

"No commissioned officer shall be removed from office during the term for which he shall have been appointed or elected."

Applicant's designation by the Commanding Officer was not for any fixed term. Neither the Constitution nor the statutes provided or fixed a definite term.

In section 3 of article 10 of the Constitution, it is provided:

"When the duration of any office is not provided by this Constitution it may be declared by law, and if not so declared, such office shall be held during the pleasure of the authority making the appointment."

The Constitution not having fixed the term, the Legislature under the provisions of the Constitution may fix it, and the Legislature seems to have fixed it by age limit.

To this court the legislative provision with reference to retirement from active duty in the military service at the same age as is provided in the federal service seems to look in the direction of the highest efficiency for a most important arm of the government, which must be composed of men not only mentally and morally qualified and equipped, but physically able to defend and protect the interests and property of the people.

To grant this application would require that this court should interfere with the orders issued by those in command of the military forces of the state under the direction of the Commander-in-Chief, the head of a co-ordinate department of the state government, which orders have been issued exactly in conformity with the solemn expressions of the legislative department of the state.

There has been no such interference with the constitutional rights of this applicant as in the opinion of this court will justify the granting of the application.

The petition therefore must be denied, with costs.